Our second case on the call of the dock of the day is Agenda Number 7, Case Number 114811, Daniel Hooker, et al. Employees v. Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago Appellant. Counsel for the Appellant, please proceed. Good morning, Your Honors. My name is Vincent Pennelly of the law firm of Burke, Burns & Pennelly, representing the petitioner, the Board of Trustees of the Firemen's Annuity & Benefit Fund of Chicago. May it please the Court, first of all, thank you for granting us the opportunity to present our oral arguments to you as to why the appellate court decision should be reversed. This case is a straightforward statutory interpretation matter in which the facts are undisputed and which presents a question of law for de novo review by the Court. In the exercise of its fiduciary duties to protect the assets of the fund for the sake of all the beneficiaries of the fund, the Board interpreted the plain language of the 2004 Legislative Amendment to Section 6111 of Article VI of the Pension Code to impose two mandatory requirements before the Board could award an enhanced annuity payment to the respondents or to any other beneficiary for duty availability pay. First, that the fireman husband must have actually received payment of duty availability pay, which we've referred to in our briefs as DAP, and with permission of the Court, I will continue to do so. Secondly, that the corresponding employee contribution have been paid to the fund in order to fund the enhanced benefit. Makes sense. This is a defined benefit plan, and you need contributions to fund the payment of benefits. Since the husband firefighters here never earned, let alone received, DAP while employed by the Fire Department, nor were corresponding contributions ever made to the fund on behalf of the respondents, the Board made the only responsible decision that it could to follow the unambiguous language that the Legislature had set forth in calculating the annuities without including DAP to the respondents. Mr. Pinelli, if this Court rules in favor of the widows in this case, would the City then contribute the amounts due from the time that DAP was established? Well... If we disagree with your position, would that generate DAP funding for widows in this type of context? Not necessarily, Your Honor, for two reasons. Go ahead. First of all, the Section 6111 amendment, the Legislature specified that the contributions were to be made, the employee contributions were to be made by the annuitant. So those are contributions that come from the annuitant, not the City. Secondly, if the Court's referring to the Section 6169 argument that's being made by the Appellee, that that section requires the City to fund the payment of all Section 6140 annuities, that will not necessarily occur. And the reason is, as we pointed out in our reply brief, that there is a position taken by the City that their contributions are capped by Section 6165 funding mechanism to 2.26, what's called the multiplier, times the amount of contributions that are given by the participants. So, in other words, any time the fund's payments exceed Section 6165 tax revenues that are paid to the fund by the City, that's it. The City said, we're not paying any more than that. And in fact, in the documents we provided to the Court, was an example of the most recent example of where in the specific levy request from the fund to the City, stating this is what we need to pay our benefits, and widow's annuities are broken out as a separate item. And indeed were a $7 million item, and that's because of a prior decision, the Bertucci decision, that opened up that class. There, the City said, we only pay to Section 615 requirements. Was the inclusion of DAP widow's benefits ever discussed in drawing up the collective bargaining agreement or not? Discussed in terms of making it pensionable? Or discussed in any context? Not to my knowledge, Judge, that the history would indicate that everybody understood that DAP was not pensionable. It was a form of additional compensation that was negotiated between the City and Local 2 on behalf of the Firefighters Union. And indeed, in the CBAs, which are attached, they are part of the record here. We have the one from the initial one that when DAP was created in 1994, and then we have a subsequent contract as well. But what's clear there is the distinction between DAP and salary. DAP is not salary, and indeed is treated separately in the collective bargaining agreements. Now, why is that significant? It's significant because for ten years after DAP came into existence in 1994, it was not pensionable. Nobody treated it that way. The City didn't by withholding contributions and giving it to the fund. The applicants didn't, and the fund didn't pay for duty availability pay as a pensionable aspect. So, and indeed, in the 1997 Holland case, which we cited, in that case, both Chicago policemen and Chicago firemen joined together to challenge the pensionability of not only DAP, but there were other forms of compensation. And in that case, the appellate court held, no, no, no, these items are not pensionable. They're separate from salary. So from 1997 forward, it was clear from that decision, DAP not pensionable. Mr. Pinelli, are you saying that the term that duty availability pay in Section 611 refers back to the previous language and states that the salary includes duty availability pay that has been received by the firemen? That's exactly what we're saying, Your Honor. And we believe... And what does that mean? That that's significant, that the legislature put in the term received. Because, you know, you don't need, we don't need a dictionary to know what that means. It means they actually got DAP from the City. They earned it. That's what the CBA says. You earn duty availability pay by being available for service. The significance of received is that when you look at the two sections of Section 611 that deal with DAP, Sections I and J, the first section talks about duty availability now being able to be included in the calculation of salary. It doesn't say it is salary because it isn't. Plus 111D gives the definition of salary, doesn't include DAP. It says for calculation purposes. Now, why is it important that it's received? Because in I, the first section that deals with DAP, it's talking about going forward from the date of this amendatory act, which was passed in January of 2004. So from that day forward, firemen who receive DAP, it's now pensionable, which means that the City now takes out of their paycheck, just like they did salary and other forms of compensation that were pensionable, withholds that and then pays it over to the pension fund. So today, a firefighter getting a check in the end of September is going to have DAP as part of the check, right? And underneath the statute now, that will be pensionable. As long as he earned it, yes. Now, let me ask you this question. I noticed throughout your briefing, in both your white brief and your yellow brief, you never addressed the Kozak case. 30 years ago, this Court held that the expression current annual salary in 6140 meant the salary of a currently employed fireman and not the fireman's salary, the deceased fireman's salary at the time of his death, and that it took into account the impact of inflation and recognized that amounts payable would increase as firefighters' salaries increased. In Kozak, this Court held that it rejected the Board's argument that the legislature did not provide a mechanism to fund the increased cost of pensions. The Court found that Section 6-169 provided funding for the expense of pensions. Section 6-169 directs the City shall contribute such sums annually as may be required to provide a widow's pension benefits as authorized under 6140. The Court found that there is nothing in the record to show that providing pensions in fluctuating amounts based on salaries paid firefighters from time to time would exceed the amounts the City of Chicago is authorized to levy. So in other words, 30 years ago, this Court said the widow's annuity is not tied to their husband or their deceased firefighter's salary. It is tied to a current firefighter's salary. Can you respond to that case which you never addressed in either your white or your yellow brief? Yes, I will. Thank you, Your Honor. The Kozak case held just exactly as the Court said. And what it did was it created, it indicated that the legislature intended to create a flexible amount of salary in Section 6140 annuities for that group of widows. And they felt that was appropriate under the circumstances. And so their annuities change every time there is a change in the contract salary for a particular rank. They get the benefit of that change going forward. And the Court said that was appropriate. Now, I don't think that all of the arguments 30 years ago were made regarding whether those annuities should have been fixed under Section 6139, which also was in the Code and talks about widows' annuities being fixed. But more importantly, the Court was clear, and it was a concern in the dissent in that case, that this doing this is anathema for a defined benefit plan. If you're paying benefits... And that may be true. I mean, there may be policy issues. I'm asking you about, for 30 years, the understanding is widows' duty, disability or not, excuse me, pension is not tied to what their husband's got. It's tied to whatever today a firefighter who holds the same position gets. If that's been the law, are you saying we should overrule COSAC? Absolutely not, Your Honor, and that's why we didn't really address it, because COSAC is the law. What we've said is we're distinguishing. That's why the distinction between DAP and salary is so critical. Then why does the statute say, Any references in this article to the salary attached to or appropriated for the permanent assigned position of classified career, service rank, grade or position of the fireman shall be deemed to include duty availability pay? Certainly that language seems to indicate that when we're talking about 6140, which says that widows get 75 percent of current annual pay, and then specifically the same language as this, as attached to or appropriated for the permanent assigned position, et cetera, all that same language, that current annual salary is deemed to include DAP. Here's what I would say on that, Judge, and I understand it, because I think that's where the appellate court grounded its decision as well. However, it's missing two important points. First is the legislative intent evidenced by the whole Public Act 92-365, which is commonly known as the Brass Bill. If you read all the sections of 111 that were amended, it's clear that the legislature intended that DAP, which had never been pensionable before, can now be included, along with other forms of salary, to the higher exempt rank employees for exempt positions that they held, ambulance commanders as well. So there were three different groups within 111 that now came into the ability to have pensionable payments. Does that include, for example, a lieutenant who had the same number of years as Mr. Murphy? It could, yes, it could, absolutely. But the difference is that the language used by the legislature would indicate they didn't intend to exempt out Section 6140 widows from this requirement. There's a strict prohibition in the statute that says any duty availability pay, any duty availability pay for which the corresponding employee contribution has not been paid, shall not be included in the calculation. But isn't that section about those people who received DAP under the Collective Bargaining Act for 10 years during the period in which it was not pensionable? And then the legislature now says, as we just read, that it is deemed pensionable. And so that Section 6112 addresses those people who are kind of caught in the middle. And if they want to have what they received before the statute was amended to be pensionable, there's certain steps they have to go through. Isn't that what that section is about? Well, you're suggesting, I think, that that clause only refers to J and not to I. In other words, for the retroactive people, that's what J, the paragraph J was. For those of you who had been getting it and you want to collect that now going back, that's a retroactivity provision. You have to do these things. And so I don't think that limitation just applies to the retroactivity group. I think it applies as well to subsection I. And why do I say that, Judge? I say it for two reasons. One, subsection I has the parenthetical for any period to date for which contributions have been paid under subsection J. So that's retroactivity. They're saying you must pay for that. But more importantly, the clause that says shall include any duty availability pay received by the fireman, that clause, and when you go to the last clause that you referred to earlier, the last clause says to include that duty availability pay. Well, why did the legislature put in that? It's clearly a reference back to the prior clause, which says duty availability pay received by the fireman. So in other words, all those firemen going forward from the adoption of this amendment who are now entitled to get duty availability pay, they're receiving it. It's being withheld. It's being paid to the fund. There's no concern about the widow not paying because if and when they die following that, she will get it because it's been received. We know that. And it will have been paid for because the contributions will have been made to the fund. So I submit to you that the plain language of I, if read in its totality, which includes the reference you referred to, still talks about duty availability pay that was received by the fireman. And it only makes sense. Ms. Finnelli, what about the last part of the clause that Justice Tice almost got to but just didn't finish the last words under 6140 talking about the widow benefit, the current annual salary attached to the classified position to which the fireman was certified at the time of his death. Is that of any import that it says at the time of his death? Well, it is in the sense that that just sets what the salary schedule would be, his rank. But importantly, Your Honor, that section, 6140, is not really what's at issue here. What's at issue here and what's controlling, we believe, is the section 6-111 because that's, you know, 6140 benefits, when that statute was written and when COSAC was decided, DAP wasn't even on the radar. Nobody even knew about it. It wasn't until DAP was pensionable in 2004 that the legislature then intended to make it such. And so they put these requirements on it. So it's really trying to stretch, in our view, the definition from 140 to make it include 111, which is not consistent with the legislative intent that's expressed throughout 111. If you're going to get these benefits now and they're going to be pensionable, they have to be paid for. Otherwise, this fund will go broke. And, indeed, we're facing a potential class action from 100 annuitants who want $2 million in unfunded benefits. If that decision is allowed. But COSAC was really interesting. COSAC rejected many of these arguments, I think, 30 years ago. And one of the things I think was interesting in COSAC was they talked about that in 1971, there was a pension commission that looked at all of these issues. And that pension commission did not want this idea of each time current firefighters or anyone else got a raise, that the widow's benefits would go up. And one of the bases of the COSAC decision is the legislature clearly rejected the pension commission's construction because they – and the COSAC says, this is going to be – I mean, it doesn't say it in these words, but says this is going to be expensive, but this is a choice the legislature has made. The only point of response to that would be, again, the COSAC court was not presented with evidence that those contributions could be capped. And that was a concern to even the COSAC court. But they said because there's no evidence before us that 6169 could not come into play here and, therefore, the fund would be in a deficit position, we can't address that. We've tried to address that with the court to show that there is a problem here with the funding of these benefits and that if you award unfunded benefits, that that's going to drive the fund into insolvency. Following up on Justice Tice's explanation, then, how would you explain the situation that I asked before about received by the firemen? What does that mean and how would that be affected? I mean, does the fireman have to receive certain benefits before that kicks in? Absolutely. That's the whole. I mean, the survivor's benefits are derivative of the fireman. And here the legislature clearly said the fireman must receive it. If you don't have that as a predicate, then no benefit can be paid. So that language has meaning and we submit that it's being written out by a decision to the contrary by the appellate court. Mr. Bonelli. Respectfully. Another question. Has the decision regarding class certification been preserved? Well, the circuit court denied class certification. The appellate court reversed and remanded, I believe, for purposes of looking at that issue. So does that address your question, Your Honor? Is there anything that's before us regarding class certification? I don't believe so, Your Honor. Other than, let me qualify that. Other than by saying, obviously, if these two respondents are not entitled to this benefit, they could not be class representatives. And in that case, obviously, there wouldn't be a proper class action. Thank you. There's no further questions. Thank you. Thank you. Thank you. Good morning, Your Honors. If it may please the court. Martin Holland for the original plaintiffs in this case, the Hooker et al. I listen to counsel with great interest here and, of course, apparently the justices here are well informed. So I'll be very brief. Just wanted to make a few points. First, counsel says this is a defined benefit plan. Ninety percent of that is correct. Chicago Firemen's Pension Plan is unique in the sense it has the dual function. One, dealing with workers' compensation and duty entries and widows from duty deaths, which is historically, and no doubt the courts have interpreted this many times, in the nature of workers' compensation. It has nothing to do with defined benefit. Ninety percent of the plan, however, is defined benefit, and it is based upon contribution. So when you look at counsel's Appendix D, page 180, 179, 180, it tells you that this is a very mature pension fund. It has something like 9,000 members. 5,000 are active firemen paying in, and those firemen paid in for DAP starting January 2004. But also at that time there was 4,042 hundred annuitants that the pension board is paying out. And they're broken down that there's 2,600 retired firemen and there's 1,350 widows and children, of which out of that 1,350, about 120 of them are the special case Section 140 duty death status widows. There's also 250 firemen on duty disability that they support and 120 firemen on occupational disability that they support. So that puts the 9,000 participants together. Now, when I tell you the nature of this benefit is different, we have to go no farther than my attachment A to the complaint on page C49. In the decision, for example, to Mrs. Hooker, it says, the retirement board has decided to grant you a compensation widows annuity under Section 6140 and a dollar figure of 75% of what Mr. Hooker would have earned in 2006 if he was alive. We know he passed away in 1998, I believe. In the fourth paragraph, the board also makes a further admission in their decision to grant The changes in your annuity status from ordinary widow to compensation widow of Article 6 has tax implications. You no longer get 1099. All duty disability benefits for the firemen and for these widows are tax-free because they're in the nature of worker compensation. The IRS says it's not retirement, it's compensation for an injury and it's tax-free. Those are significant differences. And, of course, the board knows that, but they gloss over all these points in their briefs. And I think that's, to the point that I heard here today, the justices are apparently well-informed of the Kozak case. Maybe we should look at the Collins versus the Police Pension Board case from 2002. Because in Collins, the legislators actually interpreted received by the firemen. And they interpreted shall be deemed to include. Because the Police Pension Code has the identical language put into its salary section as the firemen had done in 2004. But they did it in 1998. And, of course, as counsel brought up, Collins versus City of Chicago was the case that was decided in 1997. It was a case that said that salary should include duty availability pay, duty availability allowance in the police department, and other things like truck driver's pay and EMT pay and ambulance commander pay. Well, that case was ruled upon in 1997. And it was denied because those weren't included in the definition of salary. And immediately the police lobbyists picked it up and passed their law in 1998. Fire always demands parity. And we picked up and passed our law in 2004 because of this brass bill issue, which I explained in my brief. It really was a confrontation between the fire union and the city dealing with pensions for the exempt rank. That was handled at Section E of 6111. And it actually, Section 6111E, overrules legislatively your decision in Braun versus the Firemen's Retirement Board back in 1987, I believe. So with that, I think I can close, but I've got to hit my cross appeal. Before you get into your cross appeal, Mr. Collins, is your argument then as simple as 6111J states that any duty availability pay for which the corresponding employee's contribution has not been paid shall not be included in the calculation of salary? We heard quite a bit about that right from Mr. Panelli. Yeah. Is your argument simply 5-6-169, that those contributions should have been made? Yeah, it's made, provided for by the city. So the city shall contribute sums equal to such amounts for any period? And the pension board, for the first time this year, actually asked the city of Chicago, maybe you should start paying this because we're so unfunded. It's the first time they ever asked the city, based upon 169, to fund that part of the statute. Mr. Panelli's argument that the city takes the position it's capped? It is. That's the position of the board. The board is for city, for firemen. And ever since Kazabowski, as city clerk, that issue has never been pursued, even though there was talk of litigating over this issue for 20, 30 years on the pension board. What we have is an issue in 6-169. That amendatory language was put in there with the language current annual salary in the same public act back in 1972. They were drawn together at the hip, as it were, and made part of the funding mechanism in 1972 to do this flexible concept of salary as it goes along. The issue of whether or not the city ever pays for it, the city took the position then, well, we cap out at section 165 at the multiplier of 2.26, and that provides you $100 million and you can live off of that. And, of course, it just sat there in limbo for all these years, and maybe the pension board will pursue that against the city, but as of today, it was the first time they ever asked the city to actually pay under that provision of the statute. Okay. I should point out to you that the decision letter I was talking about at record page C-149, it states the money she's going to receive, the 75% of current annual salary to your husband, rank and grade at the time he was initially granted disability. The focus of 140 is the rank and grade of the fireman when he died, you know, or when he went on disability. He's frozen as hooker at a 30-year lieutenant for rank and grade. Murphy was frozen at a 30-year firefighter rank and grade. I put out examples in there of widows getting more. That was the widow of Dandenene, Lindenene, that gets 75% of his 25-year lieutenant, but she also gets the duty availability allowance, so her pension is higher than hooker, who had 30 years worth of service, and all by the arithmetic of adding in duty availability pay to what would be 75% of the base salary of these firefighters. What about the somewhat logical consequence that Mr. Pennelly points out with respect to unfunded equals insolvency? Your Honor, absolutely correct, and the fireman's pension fund desperately needs more cash. The legislators did find a solution to that. Just last year they passed another public act where it requires full funding by the year 2050 at 90%, and starting in 2015 the city will have to add incrementally to their funding ratio to refund that unfunded liability. So the legislators did address that issue, plus they dramatically cut all new hires since 2011, their benefits. They've gone from it takes 25 years and age 55 to get the same pension that the current employee is getting at 50 years with 20 years worth of service. So the legislator has acted on that, and you can take judicial notice of that, that that's being addressed. But I would also state that the reason for funding of a public employee pension fund is very serious. Don't get me wrong. But it's based upon FASB rules, which is based upon private industry, which is, you know, if you have to worry about pension funding at U.S. Steel, there's good reason why the federal government wants you at a very high funding ratio, because we don't know if U.S. Steel is going to be here. In contrast, the city of Chicago, as you look out this window, we're going to be here 10 years and 50 years from now. These buildings are not going anywhere. And while funding is very important, the reason why they come up with these figures, 30% funded, 40% funded, is vastly different than the underlying reason why they used it under FASB, the accounting board funding ratio formula for U.S. Steel or General Motors or Chrysler. So with that, the cross-appeal is important to me. Right now, what the pension board just told you and written to you is that they're going to give Hooker nothing. Even if you affirm the appellate court decision as it is, I'm going to get back to the pension board, and just as they did in Barry v. Retirement Board, they're going to say, your case is moved, it's over with, go away, she gets nothing. That's what they're going to do. Hooker will probably get paid if you affirm the appellate court. But in the case of Ms. Hooker, they have taken the position that everything abates upon her death. And we cross-appealed that issue because I've seen it. I've gone through this before with the Barry's case in 2009. They have a judgment in 2002 get reversed in 2005. They go to the board, and the board for the first time pops up and says, abatement, you get nothing. So by the time I got through with the 2009 case, and we had that. Isn't there already a pending appeal on that issue? A separate pending appeal on that issue? Not on Barry's case. We have a separate pending appeal on Hooker 3, which is a 2012 case that I filed, to answer the appellate court's rationale that says, look, you're probably entitled to this, but just follow the statutory procedure available to you after the case gets finalized. Well, I thought the appellate court was telling me, go ahead and file a new case because you're left with statutory recourse. The trouble is, that case is dead. No one can file a suit against the pension board if you're in the state. And the most recent case, the Reynolds case that I cited to you in my cross-appeal, Reynolds versus the fire pension board, virtually says, in a state, you've got to be a participant to sue, and in a state it's not. The case is dead on a motion to dismiss. And that's virtually what happened in my case.  The issues that you're raising here are the same issues that are currently pending in the First District. Is that right? Yes, but there's like 20 deceased widows from 2004 to now. So it's mirrored after the same complaint, Dan Hooker, and the fact that in that case we've got to first talk about the retroactive salary to these widows while they were alive and whether or not the pension board should be contractually obligated to pay that. Maybe the substance will help. But I think my concern is this Court's management of these issues. There is pending your appeal and the board's appeal in the appellate court right downstairs where it's being briefed and there will be an oral argument, a decision in that case, which may or may not be consistent with whatever we do here. Yes. And that's why I make an appeal to you that it's a de novo issue. It's strictly legal. Does a widow who's receiving Section 6-1, is she entitled to that full measure of benefit or not? I believe that justices under Rule 366 can reach that issue and say let's clarify this for the sake of efficiency because otherwise if I've got to file a new suit, as the new suit has been filed, it's going to be dismissed. It's not going to make it anywhere on this merit. What I was hoping and what I urged this Court is please remand this issue back to the circuit court and continue the case along at least so that I have a basis and a footing to continue my legal arguments. If you feel that there's not enough legal arguments presented for you and a circuit court should look at the issue of abatement for Ms. Hooker, then maybe you can remand it back and I'll have a foothold to go forward with the case like I did with Barry. If it's just dismissed like the appellate court did in 2012, Hooker's not going to see a dime out of this whole case and I think that's unjust. Anything further? Otherwise, I think I covered enough issues. Thank you. Thank you.  A few brief points in rebuttal. First of all, the Collins case referred to by counsel actually supports the board's position because in that case the Supreme Court held that corresponding contributions were required. So the outcome of that case actually supports the board's position. As far as the COSAC arguments, again, statutory interpretation principles require that absurd results not result from statutory interpretation. And in this case, there would be several significant ones. I can't imagine that the legislature intended that Section 6140 widows, who are already receiving the benefit of the enhanced salary, who in 2001 the legislature took away the diminishment provision so that they don't drop down, they continue receiving enhancement for the rest of their lives, would not require them to pay contributions for these benefits. But yet other widows, every other widow, not Section 6140 widows, they must meet these requirements. Can you answer that? Counsel is making the argument that these are two different entities, two different processes, two different whatever. One is a pension. A pension, a pension is a pension. Most of them are. And those, that's where the contributions come in. But this is something different. 6140 benefits are not pension. It's compensation. I think it was the distinction that was being drawn. It's more like workers' compensation. And so you can't, they're different and you can't compare them. That's not a distinction that's either in the pension code itself or in any case law. It's not supported by any case law. There's not one case that says Section 6140 is not a pension or is akin to a workman's comp claim. It's just a description made by counsel. There's no support for that. And, indeed, it works like every other section, every other annuity throughout Article 6, as well as other sections of the pension code. There's annuities for survivors, not only widows but children and parents as well. So that's not a distinction that makes a difference here. Is one taxable and one's not? Well. That argument was made, that the 6140 benefits are not taxable and pensions are. Well, you could, I don't know the answer to that, Your Honor. I do know that disability benefits paid to firemen are generally under IRS opinion not taxable, whereas their retirement annuities are. So there's that distinction. As far as how the IRS treats Section 6140 widows any differently, I would assume they don't. A regular widow's annuity, that is a non-Section 6140, is still a survivor's annuity under the law. So I can't see that that distinction makes a difference either. The second thing that would be really an absurdity is that retired firefighters who actually earned DAP are required to pay for it to get it in their pension. But, again, the widows and these widows, we have to focus on these respondents, their husbands never earned DAP. It didn't even, they were on disability. They were not available for service for the Chicago Fire Department. So it's undisputed that they never earned it. And in this class of widows that they've suggested exists here, the majority of them are in the same position. Their husbands never earned DAP. So you'd be granting, theoretically, all of them this enhanced benefit without any contributions to the fund. And that just doesn't make sense. On the cross-appeal issue, it's a procedural nightmare. There is no question that there is currently pending an appeal on this very issue. And let's not confuse the two issues. The issue in the hooker that he's raising here is, was she entitled to another contract increase that wasn't ratified until after she died? So the contract increase, it's not DAP, it's a contract increase, that occurred after she died. That's the issue he's raising. That's in the hooker appeal. Secondly, there's an existing appellate court decision in the Reynolds case where the court applied abatement and said, no, the benefits end when the widow dies. They're only provided for a lifetime. So that's an existing precedent. For this court to step into that at this point just is trying to go around the normal processes. So we, of course, urge you not to handle the cross-appeal and to deny it at this point. This issue will work its way through the normal processes of appeal. In closing, I would ask the court to take into consideration that the board applied the clear legislative intent as set forth in Section 6111. Nobody's saying that language is ambiguous. Neither side's taking that position. Indeed, the appellate court agreed it's unambiguous language. So you're left to apply what does receive mean and what does contribution mean. And what was the legislature's intent when they passed all these benefits, made all these compensation forms pensionable, and did they require that contributions be made? Our position is, and I think the board followed the law by saying yes. And so we'd ask you to reverse the decision of the appellate court and affirm the decision of the circuit court that granted summary judgment to the board. Thank you very much. Thank you. Case number 114811, Daniel Hooker, et al. Appellees v. Retirement Board of the Farmers' Annuity and Benefit Fund of Chicago Appellant. It's taken under advisory agenda number 7. Mr. Marshall, Illinois Supreme Court stands in recess until 1105.